UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOEL FULLER, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 25-cv-11565-ADB |
| CARRERA & PARTNERS, INC. and NICK CARRERA, | * | |
| Defendants. | * | |

## MEMORANDUM AND ORDER

BURROUGHS, D.J.

Plaintiff Joel Fuller ("Fuller") brings this action against his former employers, Carrera & Partners, Inc. ("Carrera & Partners") and its president, Nick (Dominic) Carrera ("Nick Carrera" or "Carrera") (together, "Defendants"), asserting claims related to the termination of his employment. Before the Court is Defendants' motion to dismiss Fuller's complaint, [ECF No. 1-1 ("Complaint" or "Compl.") at 5–10], pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction. [ECF No. 9]; see also [ECF No. 10 ("Defs.' Mem.")]. For the reasons stated below, Defendants' motion is **GRANTED**.

I.      **BACKGROUND**

     A.      **Factual Background**

The following relevant facts are taken from the Complaint, the factual allegations of which the Court assumes to be true when considering a motion to dismiss. Ruivo v. Wells Fargo

Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014).  The Court has also considered "documents incorporated by reference in [the complaint], matters of public record, and other matters susceptible to judicial notice," Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008) (alteration in original) (quoting In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 20 (1st Cir. 2003)), as well as "facts put forward by the defendants, to the extent that they are uncontradicted," for purposes of resolving the pending jurisdictional issue, Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quoting Mass. Sch. of L. at Andover, Inc. v. A.B.A., 142 F.3d 26, 34 (1st Cir. 1998)).

Plaintiff Joel Fuller resides in Medway, Massachusetts.  [Compl. ¶ 1].  Defendant Carrera & Partners, an automobile advertising agency, is a Florida corporation with a principal place of business in Deerfield Beach, Florida.  [Id. ¶¶ 2, 9]; [ECF No. 11 ("Carrera Aff.") ¶¶ 12–13]. Defendant Nick Carrera, a Florida resident, was the company's president at all relevant times. [Compl. ¶ 3]; [Carrera Aff. ¶¶ 2, 6].  Fuller maintains that Carrera "personally hired [him] to join Carrera & Partners."  [ECF No. 15 at 16–17 ("Fuller Aff.") ¶ 4].

Carrera first spoke with Fuller in October 2024 over the phone, from Florida.  [Carrera Aff. ¶ 25].  In November 2024, again from Florida, Carrera conducted a phone interview with Fuller for an Account Team Leader position, [id. ¶ 26], and then spoke with Fuller twice more over the subsequent weeks, with at least one of those calls from Florida, to further discuss the position, training, and compensation, [id. ¶¶ 27–28].  Carrera negotiated and approved Fuller's terms of compensation "primarily through phone, email, and text communications while [Fuller] was located in Massachusetts."  [Fuller Aff. ¶¶ 4, 8].  In December 2024, Carrera emailed Fuller an offer letter that provided for a $125,000 base annual salary, four weeks of paid time off per year, and commission pay.  [Compl. ¶¶ 13–15]; [ECF No. 15 at 19–20 ("Offer Letter")]; [Carrera

Aff. ¶ 29]. The commission pay included a 3% commission on Carrera & Partners' net revenues due to Fuller upon collection (the Agency Gross Profitability Commission) and a 3% commission on Carrera & Partners' net revenues on any digital business handled by Fuller (the CF Digital Commission). [Compl. ¶ 15]; [Offer Letter]. The offer letter, which was addressed to Fuller's home in Medway, Massachusetts, further specified that Fuller would be "Full Time working from home, with visits to Clients and home office," starting on January 1, 2025. [Offer Letter at 19]; [Fuller Aff. ¶ 3].

Fuller proffers that he "performed approximately 10 days of work for Carrera & Partners" during his roughly three months with the company,[1] primarily in the areas of client management, budget planning, and marketing, see [Compl. ¶¶ 11–12, 19]; [Fuller Aff. ¶ 5], and that his "Massachusetts-based efforts" during those ten days' worth of work "secured client accounts generating more than $325,000 in net revenue in January 2025 alone, with additional revenue in February and March 2025," [Fuller Aff. ¶ 7]; see also [Compl. ¶¶ 22–23 (listing net revenue and commissions from client accounts serviced by Fuller)]. Fuller "lived and worked from [his] home office in Medway during [his] entire tenure," and "regularly joined company calls and meetings via videoconference while physically located in Massachusetts." [Fuller Aff. ¶¶ 2, 5]. Additionally, "[a]t the direction of Carrera & Partners," Fuller attended a client pitch meeting in person at a Mitsubishi office in Danvers, Massachusetts. [Id. ¶ 6]; see also [ECF No. 15 ("Pl.'s Opp.") at 2]. Other Carrera & Partners employees joined the Mitsubishi meeting via Zoom. [Fuller Aff. ¶ 6]. No Carrera & Partners employee, including its president Nick Carrera,[2]

---

[1] See infra note 3.

[2] [Carrera Aff. ¶ 11 ("I have never traveled to Massachusetts on behalf of the Company or to conduct business for the Company. I have never performed work for the Company in Massachusetts.")].

has ever "traveled to Massachusetts to conduct business, to meet with customers or potential customers, or to attend any conferences," [Carrera Aff. ¶ 20], and Fuller is the only Massachusetts resident ever hired by the company, [id. ¶ 22].

Nick Carrera "made the decision to terminate" Fuller's employment at or around the end of Fuller's ninety-day initial probationary period, and called Fuller to let him know on March 28, 2025 (the "termination date"). [Compl. ¶ 17]; [Carrera Aff. ¶ 33]. Fuller alleges that, as of the termination date, he had earned, but not been paid, approximately $4,807.69 in salary pay and $30,750.00 in commissions, and accrued about four weeks of paid time off, the equivalent of approximately $9,615.38.[3] See [Compl. ¶¶ 19–30]. Carrera & Partners did not pay Fuller on his termination date. [Id. ¶¶ 20, 28, 30]. On April 2, 2025, Fuller asked Carrera & Partners to pay him his earned salary, [id. ¶ 31], and on April 15, 2025, Carrera & Partners paid Fuller his "final salary," [id. ¶ 21]. Fuller alleges that as of April 28, 2025, the date he initially filed the Complaint, Carrera & Partners owed him approximately $40,365.38, an amount reflecting his unpaid commissions and accrued paid time off, as well as liquidated damages and interest for his late-paid salary. [Id. ¶ 32]. In his Complaint, Fuller asserts three claims against Defendants: a claim for nonpayment of wages in violation of the Massachusetts Wage Act, Mass. Gen. Laws ch. 149, § 148, against Carrera & Partners and Nick Carrera (Count I); a breach of contract claim against Carrera & Partners (Count II); and an unjust enrichment claim against Carrera & Partners (Count III). [Id. ¶¶ 34–46].

---

[3] Fuller does not explain how he calculated the number of days he worked, why he performed only approximately ten days of work during his ninety-day initial probationary period, or how he accrued about four weeks of paid vacation during that same period. Although it is difficult to make sense of these allegations, which are unaccompanied by supporting documentation, the Court will credit them for the purposes of resolving the jurisdictional issue.

### B.     Procedural History

Fuller initially filed the Complaint in Norfolk Superior Court on April 28, 2025.  [ECF No. 1 ¶ 1].  Defendants filed a notice of removal to the United States District Court on May 30, 2025, based on diversity jurisdiction under 28 U.S.C. § 1332.  [ECF No. 1].  On August 6, 2025, Defendants filed the instant motion to dismiss the Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), [ECF No. 9], along with a supporting memorandum, [Defs.' Mem.], and the affidavit of Nick Carrera, [Carrera Aff.].  Fuller filed a memorandum of opposition on September 3, 2025, [Pl.'s Opp.], along with a supporting affidavit, [Fuller Aff.], and a copy of his offer letter from Carrera & Partners, [Offer Letter].

## II.     LEGAL STANDARD

The plaintiff bears the burden of establishing that jurisdiction exists over the defendants. A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (citing Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)).  To determine whether the plaintiff has met this burden, the district court most commonly applies the prima facie standard in the early stages of litigation. Id. at 58 & n.5 (first citing Phillips, 530 F.3d at 26 n.2; and then quoting Rodriguez v. Fullerton Tires Corp., 115 F.3d 81, 83–84 (1st Cir. 1997)); United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001) ("When a district court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the 'prima facie' standard governs its determination." (first citing United Electrical Radio & Machine Workers of America (UE) v. 163 Pleasant St. Corp., 987 F.2d 39, 43 (1st Cir. 1993); and then citing Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992))).

Under the prima facie standard, the plaintiff may not "rely on unsupported allegations in [his] pleadings" and "must put forward 'evidence of specific facts' to demonstrate that

5

jurisdiction exists." A Corp., 812 F.3d at 58 (quoting Platten v. HG Berm. Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006)).  In other words, the plaintiff must "proffer[] evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." Id. (quoting Phillips, 530 F.3d at 26).  "[T]he district court . . . accepts properly supported proffers of evidence by a plaintiff as true." Boit, 967 F.2d at 675 (first citing Dakota Indus., Inc. v. Dakota Sportswear, Inc., 946 F.2d 1384, 1389 (8th Cir. 1991); then citing Serras v. First Tenn. Bank Nat'l Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989); and then citing Murphy v. Erwin-Wasey, Inc., 460 F.2d 661, 663 (1st Cir. 1972)); see also Dakota Indus., 946 F.2d at 1389 ("If the district court does not hold a hearing and instead relies on pleadings and affidavits [to assess whether the plaintiff has made a prima facie showing of jurisdiction], the court must look at the facts in the light most favorable to the [plaintiff], and resolve all factual conflicts in favor of [the plaintiff]." (citation omitted)).  The Court will also consider undisputed facts offered by the defendants. A Corp., 812 F.3d at 58 (citing Daynard, 290 F.3d at 51).

## III.      DISCUSSION

"To establish personal jurisdiction in a diversity case, a plaintiff must satisfy both the forum state's long-arm statute and the Due Process Clause of the Fourteenth Amendment." C.W. Downer & Co. v. Bioriginal Food & Sci. Corp., 771 F.3d 59, 65 (1st Cir. 2014) (citing Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 204 (1st Cir. 1994)).  The Court begins with the analysis under the Massachusetts long-arm statute, because its requirements are "not coextensive with the parameters of due process, and in order to avoid unnecessary consideration of constitutional questions, a determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 85 N.E.3d 50, 52 (Mass. 2017) (first citing Morrill v. Tong, 453 N.E.2d 1221, 1229–30 (Mass. 1983); and then citing Beeler v.

6

Downey, 442 N.E.2d 19, 21 n.4 (Mass. 1982)); see also Cossart v. United Excel Corp., 804 F.3d

13, 18 (1st Cir. 2015) ("The requirements of the Massachusetts long-arm statute are similar to—

although not necessarily the same as—those imposed by the Due Process Clause.").

### A.    The Massachusetts long-arm statute

The parties agree that the relevant portion of the Massachusetts long-arm statute is § 3(a),

which provides that "[a] court may exercise personal jurisdiction over a person . . . as to a cause

of action in law or equity arising from the person's . . . transacting any business in this

commonwealth." Mass. Gen. Laws ch. 223A, § 3; [Pl.'s Opp. at 4–7]; [Defs.' Mem. at 11]. To

determine whether Defendants transacted business in Massachusetts under the meaning of § 3(a),

the Court "must 'construe[] the "transacting any business" language of the statute in a generous

manner'" with a "focus on 'whether the defendant[s] attempted to participate in the

commonwealth's economic life.'" Cossart, 804 F.3d at 18 (alterations in original) (quoting

United Electrical, Radio & Machine Workers of America v. 163 Pleasant St. Corp., 960 F.2d

1080, 1087 (1st Cir. 1987)); see also Hahn v. Vt. L. Sch., 698 F.2d 48, 50 (1st Cir. 1983)

(referring to "several indications in the Massachusetts case law that the language 'transacting any

business' should be construed broadly"). The Court must also determine whether there is an

"independent basis" under § 3(a) for jurisdiction over Nick Carrera, because "[j]urisdiction over

the individual officers of a corporation under the Massachusetts long arm statute may not be

based on jurisdiction over the corporation." Levesque v. Schroder Inv. Mgmt. N. Am., Inc., 368

F. Supp. 3d 302, 308 (D. Mass. 2019). Finally, the statute's "arising from" language permits

jurisdiction only if "the transacted business was a 'but for' cause of the harm alleged in the

claim." Cossart, 804 F.3d at 18 (citing Tatro v. Manor Care, Inc., 625 N.E.2d 549, 551 (Mass.

1994)).

The Florida-based Defendants maintain that no Carrera & Partners employee has "traveled to Massachusetts for business purposes," and that Carrera & Partners has never registered with the Commonwealth to do business in Massachusetts.  [Defs.' Mem. at 3]. Section 3(a) does not, however, require a defendant to be physically present to transact business in Massachusetts, United Electrical, Radio & Machine Workers of America, 960 F.2d at 1087 (citing Bond Leather Co. v. Q.T. Shoe Mfg. Co., 764 F.2d 928, 932 (1st Cir. 1985)), and may be satisfied by "even somewhat exiguous acts on a defendant's part," because the more rigorous inquiry into the "extent of a nonresident's involvement is properly relevant to the constitutional, not the statutory, dimension of the jurisdiction inquiry."  Id. (citation modified) (citing, inter alia, Bond Leather, 764 F.2d at 932).  As relevant to the present context, "Massachusetts courts have held that frequent communications between a plaintiff employee and an out-of-state employer defendant may constitute 'purposeful and continuous' contacts sufficient to satisfy the transacting business requirement."  Lawrence v. Next Ins., 774 F. Supp. 3d 237, 259 (D. Mass. 2025) (quoting Hongyu Luo v. Tao Ceramics Corp., No. 13-cv-5280, 2014 WL 3048679, at *2 (Mass. Super. Ct. 2014)).  Here, the communications between Fuller and Defendants are sufficient to satisfy the transacting business requirement, because Fuller's offer letter contemplated that he would work for Carrera & Partners full-time from Massachusetts, and because Fuller then "worked from [his] home office in Medway during [his] entire tenure" with the company, "regularly join[ing] company calls and meetings via videoconference while physically located in Massachusetts."  [Fuller Aff. ¶¶ 2, 5].  Further, Fuller's in-person participation at the client pitch meeting in Danvers, Massachusetts, which he attended as an employee of and "[a]t the direction of" Carrera & Partners, [id. ¶ 6], may be sufficient on its own regardless of the meeting's result.  See Cossart, 804 F.3d at 19 (clarifying that Massachusetts

precedent does not require defendants to have <u>successfully</u> solicited business in Massachusetts); see also Haddad v. Taylor, 588 N.E.2d 1375, 1377–78 (Mass. App. Ct. 1992) (finding § 3(a) satisfied when out-of-state defendant negotiated a Massachusetts land sale via telephone and mail with the plaintiff and a real estate broker in Massachusetts, even though no binding contract was created).  Although Defendants employed Fuller for only a few months, it cannot be said that Defendants merely engaged in an "isolated or incidental transaction with a Massachusetts resident," which may be insufficient to satisfy § 3(a).  Hongyu Luo, 2014 WL 3048679, at *2 (finding defendant's contacts with plaintiff, who worked for defendant's Texas ceramics business from a Massachusetts office, to be "clearly" sufficient to satisfy § 3(a)'s transacting business requirement when, "[o]ver the course of 15 months, [defendant] allegedly contacted [plaintiff] on a weekly basis regarding his progress on securing sales" in Massachusetts); see also Tatro, 625 N.E.2d at 552 (finding it "obvious" that a defendant hotel, a Delaware corporation doing business in California, transacted business in Massachusetts when the hotel "solicited and obtained meeting and convention business from at least ten Massachusetts businesses, and maintained telephone and mail contact with them").

The transacting business requirement of § 3(a) is also satisfied as to Nick Carrera, the individual defendant in this action.  "[P]recedent supports subjecting corporate officers to jurisdiction under the long-arm statute at least where they are 'primary participants' in corporate action."  Cossart, 804 F.3d at 19.  Here, Carrera acted as a "primary participant" in the relevant corporate action when he, as president of Carrera & Partners, personally interviewed Fuller, discussed terms of employment with Fuller over multiple phone calls, sent Fuller his offer letter, and called Fuller to terminate his employment after making the decision to do so, see [Compl. ¶¶ 5, 10]; [Fuller Aff. ¶¶ 4, 8]; [Carrera Aff. ¶¶ 25–29, 33].  He is therefore subject to the reach of

9

§ 3(a).  Cf. Cossart, 804 F.3d at 18–19 (finding president of Kansas company subject to personal jurisdiction as a "primary participant" in corporate activity where the president "personally negotiated" an employment contract contemplating that plaintiff would work from Massachusetts and signed a certificate of registration establishing a Massachusetts sales office for the company); see also Post v. Mark Edward Partners LLC, No. 22-cv-10148, 2022 WL 5118214, at *2 (D. Mass. Oct. 3, 2022) (noting that "individual defendants acted as 'primary participants' in their decision to cease payment of Plaintiff's wages").

Finally, the long-arm statute's "arising from" language is clearly satisfied here, as Fuller's claims for unpaid wages "arise directly from the work [Fuller] performed for Carrera & Partners from [his] Massachusetts home office and the client meetings [he] conducted in Massachusetts," [Fuller Aff. ¶ 11], such that the alleged harm would not have happened but for Defendants' transacting business in the commonwealth—namely, their hiring Fuller to work for Carrera & Partners.  Cf. Cossart, 804 F.3d at 19 (finding the "arising from" requirement to be "easily met . . . where [plaintiff's] claim arose from . . . work he performed in Massachusetts under his employment contract with [defendant]").  The Court thus proceeds to the constitutional analysis.

**B.      Due Process Clause of the Fourteenth Amendment**

Under the Due Process Clause, courts may exercise either general or specific personal jurisdiction.  Fuller does not argue that general jurisdiction, which "requires affiliations 'so continuous and systematic as to render the foreign corporation essentially at home in the forum State,'" Daimler AG v. Bauman, 571 U.S. 117, 133 n.11 (2014) (citation modified) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)), applies to either

Carrera & Partners, a Florida corporation, or Nick Carrera, a Florida resident.  The Court must therefore determine only whether it may exercise specific jurisdiction over Defendants.

"Specific jurisdiction exists when there is a demonstrable nexus between a plaintiff's claims and a defendant's forum-based activities."  Swiss Am. Bank, 274 F.3d at 618 (quoting Mass. Sch. of L., 142 F.3d at 34).  Specifically, the defendant must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  Baskin-Robbins Franchising LLC v. Alpenrose Dairy, Inc., 825 F.3d 28, 35 (1st Cir. 2016) (alteration in original) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).  In the First Circuit, the plaintiff must demonstrate that all three requirements of the minimum contacts analysis are met:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.  Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable.  Third, the exercise of jurisdiction must . . . be reasonable.

Daynard, 290 F.3d at 60–61 (quoting Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 144 (1st Cir. 1995)).  The Supreme Court has emphasized that the specific jurisdiction analysis is fact-dependent and "not susceptible of mechanical application."  PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17 (1st Cir. 2019) (quoting Kulko v. Super. Ct. of Cal., 436 U.S. 84, 92 (1978)).

### 1.    Relatedness

Generally, with regard to relatedness, the constitutional analysis requires more than "a broad but-for argument" and "demands something like a proximate cause nexus," but not "strict adherence to a proximate cause standard."  See Lawrence, 774 F. Supp. 3d at 251 (citation modified) (quoting Harlow v. Child.'s Hosp., 432 F.3d 50, 61 (1st Cir. 2005)).  Out-of-state

"communications directed into Massachusetts may be considered contacts in the forum for relatedness purposes."  Id. at 252; see also LaVallee v. Parrot-Ice Drink Prods. of Am., Inc., 193 F. Supp. 2d 296, 303 (D. Mass. 2002) ("The transmission of information into Massachusetts by way of the mails, the internet, or the telephone is decidedly a contact for . . . the relatedness analysis.").  Here, Fuller's claims, all of which are related to the alleged nonpayment of wages by Defendants, are sufficiently based on Defendants' contacts directed to Fuller in Massachusetts, in particular Nick Carrera's phone call terminating Fuller's employment.  See id. (finding that defendant employer's remote communications with Massachusetts-based employee bringing employment claims would satisfy "[e]ven . . . a strict proximate cause standard").  Fuller thus satisfies the "flexible, relaxed" relatedness requirement.  PREP Tours, 913 F.3d at 18 (quoting Adelson v. Hananel, 652 F.3d 75, 81 (1st Cir. 2011)).

### 2.      Purposeful availment

The Court finds that due process nonetheless bars this Court's exercise of specific jurisdiction over Defendants, because Defendants' Massachusetts contacts do not "represent a purposeful availment of the privilege of conducting activities" in the commonwealth, Daynard, 290 F.3d at 60 (quoting Foster-Miller, 46 F.3d at 144).

A nonresident defendant satisfies purposeful availment when it "create[s] a 'substantial connection' with the forum State" by "deliberately direct[ing] its efforts toward" it.  See C.W. Downer, 771 F.3d at 68 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)); id. (explaining that "[j]urisdiction has been upheld where the defendant purposefully reached out beyond its State and into another by, for example, entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State" (citation modified) (quoting Walden v. Fiore, 571 U.S. 277, 285 (2014))).  The analysis focuses on "voluntariness

and foreseeability," N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005) (quoting

Sawtelle v. Farrell, 70 F.3d 1381, 1391 (1st Cir. 1995)), in order to discern whether "a defendant

has purposefully directed its activities towards the forum state in a manner that could reasonably

subject it to that state's jurisdiction," Lawrence, 774 F. Supp. 3d at 252; see also PREP Tours,

913 F.3d at 19 ("The flip side of this deal, however, is that when the out-of-forum defendant has

not 'manifestly . . . availed himself of the privilege of conducting business there,' it would be

'unreasonable to require [the defendant] to submit to the burdens of litigation in that forum[.]'"

(omission and alterations in original) (quoting Burger King, 471 U.S. at 476)).  Remote

communications, which are "often the primary means by which business relationships are forged

and conducted," may be sufficient on their own.  PREP Tours, 913 F.3d at 20.

In the First Circuit, the question of whether an out-of-forum defendant's remote

communications constitute purposeful availment "hinges" on three factors: (1) "the defendant[s']

in-forum solicitation of the plaintiff's services"; (2) "the defendant[s'] anticipation of the

plaintiff's in-forum services"; and (3) "the plaintiff's actual performance of extensive in-forum

services."  PREP Tours, 913 F.3d at 20–21 (emphases omitted) (quoting Copia Commc'ns, LLC

v. AMResorts, L.P., 812 F.3d 1, 6 (1st Cir. 2016)).  "The number and duration of the remote

contacts are significant to the analysis."  C.W. Downer, 771 F.3d at 68; see also PREP Tours,

913 F.3d at 20 (noting that the First Circuit's factors for analyzing remote contacts reflect the

Supreme Court's observation that whether a defendant should foresee out-of-state litigation "will

vary with the quality and nature of the defendant's activity" (quoting Burger King, 471 U.S. at

474–75)).

Here, Plaintiff alleges that Defendants' Massachusetts contacts include (1) negotiating

employment terms with Fuller while he was located in Massachusetts; (2) retaining Fuller as a

remote, probationary employee for about three months while aware of his Massachusetts residency; (3) deriving revenue from Fuller's Massachusetts-based work; and (4) sending Fuller to a client pitch meeting in Massachusetts. While the question of purposeful availment for a remote employee, at least under the facts of this case, remains "more grey than black and white," PREP Tours, 913 F.3d at 29–30 (citation modified), on the present record, and as to all defendants, the Court finds that current precedent falls short of requiring a finding of purposeful availment where the at-issue remote employment was as transient as Fuller's, so slightly touched on Massachusetts commerce, and had an appreciable aspect of fortuity. Cf. Collision Commc'ns, Inc. v. Nokia Sols. & Networks Oy, 485 F. Supp. 3d 282, 296 (D. Mass. 2020) (calling defendants' Massachusetts contacts "simply 'fortuitous'" and declining to find purposeful availment where New Hampshire employer allowed one of its own employees to work remotely from Massachusetts and then sought, on that basis, to hale a Finnish company into Massachusetts court (quoting Sawtelle, 70 F.3d at 1391)).

As to transience, Fuller approximates that he worked a total of ten days for Carrera & Partners, and he was terminated after just a few months, at or around the end of an "initial probationary period" with the company. [Compl. ¶ 19]; [Carrera Aff. ¶ 33]. Nick Carrera, the individual defendant, "did not train, manage, [or] supervise" Fuller, or "participate in any communications . . . or meetings with customers or potential customers" with Fuller, [Carrera Aff. ¶ 34]. Cf. PREP Tours, 913 F.3d at 29–30 (finding no purposeful availment where it could not be reasonably inferred that the parties' communications "show[ed] that the defendants were contemplating the kind of ongoing and close-working relationship . . . that could establish the requisite substantial connection between the defendants and the forum" (first citing Cossart, 804 F.3d at 21; and then citing C.W. Downer, 771 F.3d at 67)); Cossart, 804 F.3d at 16–17, 21–22

14

(finding purposeful availment where employment contracts between defendant company and plaintiff stated that the company would provide plaintiff with business equipment, including a computer, printer, cell phone, and video conference equipment, to facilitate his remote work from Massachusetts; where defendant company, acting through its president, registered a Massachusetts sales office one day after hiring plaintiff and kept that registration current while retaining plaintiff; and where plaintiff "did significant work for [defendant company] in Massachusetts" over a period of roughly three years); Lawrence, 774 F. Supp. 3d at 250–53 ("There is no dispute that [the defendant CEO and plaintiff] met regularly over Zoom during the just over ten-month period [that plaintiff served as general counsel for defendant company]. . . . [The CEO] purposefully availed himself of the benefits and protections of Massachusetts law by regularly communicating with and supervising a resident employee to conduct a significant part of his business . . . ."); id. at 253–57 (explaining that "what matter[ed] most [for the question of purposeful availment was] that, per the terms of her initial offer letter, [plaintiff] was anticipated to be working remotely from Massachusetts throughout the course of her work for [defendant company], which [defendant CEO] knew, and did in fact complete extensive work there in the period in which she met regularly with [the CEO]" (emphasis added)).

Further, as to Massachusetts commerce, Carrera & Partners is not registered to do business in Massachusetts, does not have a registered agent for service of process in Massachusetts, and has never hired a Massachusetts resident aside from Fuller, [Carrera Aff. ¶¶ 12, 14–15]. Nick Carrera "[has] never performed work for the Company in Massachusetts," [id. ¶ 11], and no Carrera & Partners employee "has traveled to Massachusetts to conduct business, to meet with customers or potential customers, or to attend any conferences," [id. ¶ 20]. While Fuller alleges that his client accounts generated significant net revenue for Carrera &

Partners during his probationary period, [Fuller Aff. ¶ 7]; see also [Compl. ¶¶ 22–23], and that he

physically attended a client pitch meeting in Danvers, Massachusetts at the direction of the

company, Fuller does not dispute, and the record does not contradict, Defendants' assertion that

"[t]he Company has never derived revenue from any customer that was based in or operated out

of Massachusetts,"[4] [Carrera Aff. ¶ 18]. The Court also notes that Fuller was allowed, rather

than required, to work from Massachusetts, and there is no suggestion that Defendants intended

his efforts to be primarily focused on Massachusetts. See [Offer Letter at 19 (stating that Fuller

would be "Full Time working from home, with visits to Clients and home office")]; [Fuller Aff.

¶ 3 (same)]; [Carrera Aff. ¶ 30 ("Plaintiff was hired to work as a remote employee. The

Company did not require or request that Plaintiff work from Massachusetts. The Company

sought no benefit and derived no benefit from Plaintiff's residence in Massachusetts.")].

In sum, Fuller has not shown that Defendants established the requisite "substantial

connection" with the commonwealth, C.W. Downer, 771 F.3d at 68. Fuller fails in particular to

show that his handful of days' work amounted to an "actual performance of extensive in-forum

services" making it reasonably foreseeable that Defendants would be haled into Massachusetts

court," PREP Tours, 913 F.3d at 20 (emphasis omitted) (quoting Copia, 812 F.3d at 6). Given

that Fuller performed only approximately ten days of work for Defendants, the fact that the

employment relationship did not progress past Fuller's initial probationary period, and the thin

evidence surrounding Defendants' business connections with Massachusetts, the Court does not

find that Defendants purposefully availed themselves of the privilege of conducting activities in

---

[4] Fuller argues in his memorandum of opposition that his "work from Massachusetts led to business opportunities for Defendants in the Commonwealth," [Pl.'s Opp. at 12], but does not elaborate. He does not, for example, proffer that the meeting in Danvers resulted in Massachusetts business for Carrera & Partners.

the commonwealth.  Therefore, the Court may not exercise specific jurisdiction over Defendants, and stops the minimum contacts analysis short of a discussion of whether such exercise would be reasonable.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion to dismiss the Complaint for lack of personal jurisdiction is **GRANTED** without prejudice and with leave to amend within 21 days.

**SO ORDERED.**

March 31, 2026                                                      */s/ Allison D. Burroughs*
                                                                      ALLISON D. BURROUGHS
                                                                      U.S. DISTRICT JUDGE